UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

APPDIFF, INC.,

            Plaintiff,

v.

JENNIFER L. BONINE, RICHARD W. FAULISE, & ANDREW W. BIRKHOLZ,

            Defendants.

Civil No. 20-1558(JRT/HB)

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

---

Corey Lee Gordon and Eugene Hummel, **BLACKWELL BURKE PA,** 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415; Mark Lambert and Adam Gershenson, **COOLEY LLP**, 4401 Eastgate Mall, San Diego, CA 92121, for plaintiff.

Faris Rashid, Robert J. Gilbertson, and Davida Sheri McGhee, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for defendants.

Plaintiff Appdiff, Inc. filed this action against former employees Jennifer L. Bonine, Richard W. Faulise, and Andrew W. Birkholz (collectively, the "Defendants") alleging breach-of-contract, breach of a duty of loyalty, deceptive trade practices, and aiding and abetting a breach of the duty of loyalty. Shortly after filing its Complaint, Appdiff filed a Motion for a Temporary Restraining Order ("TRO") pursuant to Fed. R. Civ. P. 65(b). After holding a status conference, the Court allowed Defendants time to respond to Appdiff's

Motion. As such, the Court will treat Appdiff's TRO Motion as a motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65(a).

Because Appdiff has failed to show irreparable harm, the Court will deny the motion. Even so, the Court will order that the parties engage in expedited discovery, the contours of which should be set by the Magistrate Judge, to resolve the remaining ownership issues that pertain to the limited accounts still in dispute.

## BACKGROUND

Appdiff is a technology company in the artificial intelligence ("AI") business and is organized under the laws of Delaware with its principal place of business located in California. (Compl. ¶ 2, July 10, 2020, Docket No. 1.) Defendants are residents of Minnesota and former Appdiff employees who worked out of Appdiff's Minneapolis office. (*Id.* ¶¶ 3–5.) Prior to their employment with Appdiff, Defendants founded the AI company PinkLion. (*Id.* ¶ 45) In March 2020, approximately eight months into their Appdiff employment, Defendants sold PinkLion to Appdiff. (*Id.* ¶ 47, Decl. of Jason Arbon ("Arbon Decl.") ¶ 25, July 14, 2020, Docket No. 13.) Defendant Birkholz was terminated by Appdiff shortly after Appdiff purchased PinkLion as part of a larger reduction in staff due to the economic uncertainty created by COVID-19. (Arbon Decl. ¶ 33.)

Despite selling PinkLion to Appdiff, from approximately May to mid-July 2020, Appdiff alleges Defendants operated as though they still owned PinkLion. (*Id.* ¶¶ 25–32.) For example, Appdiff alleges Defendants entered into contracts on PinkLion's behalf. (*Id.*

¶ 28.) Appdiff also alleges that Defendants diverted business from Appdiff when, on Appdiff time, they fraudulently and falsely pitched venture capital firms to invest in PinkLion as if it had never been sold, when in reality Defendants planned to use the money raised for a new, undisclosed AI project, called "The AI App Store" unrelated to Appdiff. (*Id.* ¶ 34–36, 43.) Bonine and Faulise also allegedly gave Birkholz unauthorized access to the PinkLion servers. (*Id.* ¶ 37.)

On July 10, 2020, after being confronted about their actions, Bonine and Faulise allegedly admitted to the actions and were terminated. (*Id.* ¶¶ 39, 42–45.) Appdiff filed this action later that same day, alleging five Counts against Defendants: (I) breach-of-contract against Bonine and Faulise for various violations of the employment agreement; (II) breach of fiduciary duty of loyalty; (III) breach of post-termination employment obligations against Bonine and Faulise;[1] (IV) violations of Minnesota Deceptive Trade Practices Act against all Defendants; (V) Aiding and abetting breach of fiduciary duty against all defendants. (Compl. ¶¶ 73–127.)

On July 14, 2020, Appdiff filed a Motion for a TRO pursuant to Fed. R. Civ. P. 65(b), seeking an order from the Court (1) preventing Defendants from misrepresenting themselves to investors and the tech industry as representatives of Plaintiff and (2) compelling them to return Plaintiff's confidential business records, technology, and

---

[1] This appears to be alleged violations of the same contract under Count I, and should likely be considered alongside the other allegations in Count I for breach-of-contract.

critical passwords to the company's server and computer accounts.[2] (Mem. Supp. at 8, July 14, 2020, Docket No. 8.) Despite Appdiff purchasing PinkLion, PinkLion's systems, servers, and other proprietary information had not been fully integrated into Appdiff's systems at the time of Bonine and Faulise's termination. Under their employment contracts, Appdiff alleges Bonine and Faulise were required to return company property and provide Appdiff with required login and password information to access the PinkLion servers and information, which became Appdiff property after it acquired PinkLion. (*Id.* 47.) Appdiff stated Bonine and Faulise failed to turn over this information despite promising they would after being terminated. (*Id.* ¶ 48.) Without this information and access to PinkLion, Appdiff states it is irreparably harmed because it cannot effectively run its business and is deprived of customer information. (*Id.* ¶ 49.)

After holding two status conferences with the parties the Court declined to issue a TRO and instead allowed Defendants time to respond. (*See* Minute Entry, July 16, 2020, Docket No. 33, Minute Entry, July 21, 2020, Docket No. 35.)

---

[2] Specifically, Appdiff requested a TRO preventing Defendants from (1) representing themselves as officers, employees, or representatives of Appdiff or PinkLion; (2) soliciting revenue from venture capital funds by misrepresenting that they are acting on behalf PinkLion; (3) using, disclosing or relying on Appdiff's confidential information; (4) failing to return Appdiff's confidential information; (5) failing to provide Appdiff with all account passwords associated with PinkLion; (6) accessing servers or other accounts owned or used by PinkLion; (7) physically accessing PinkLion's physical office space; (8) refusing to identify bank account information associated with PinkLion; and (9) using or transferring in any way money or assets Defendants acquired through using the PinkLion name after March 13, 2020. (Proposed Order ¶¶ 1–9, July 14, 2020, Docket No. 22.)

On July 30, 2020 Defendants filed a response disputing most of the allegations alleged in the Complaint, but also noting that they have agreed to much of Appdiff's TRO requests, including that they will stop representing or associating themselves with the PinkLion name.  (*See* Def.'s Opp'n. at 15–20, July 30, 2020, Docket No. 36.)

Remaining in dispute are ownership, access, and control over four specific, cloud-based accounts: (1) Defendants' Microsoft Office365 email accounts; (2) Defendant Birkholz's GitHub account; (3) Defendant Bonine's HubSpot account; and (4) Defendant Birkholz's personal Slack account.  Defendants also state that they are preserving without altering these accounts.  (Decl. of Jennifer L. Bonine ("Bonine Decl.") ¶ 23, July 30, 2020, Docket No. 38, Decl. of Andrew A. Birkholz ("Birkholz Decl.") ¶ 9, July 30, 2020, Docket No. 39, Decl. of Richard W. Faulise ¶ 4–5, July 30, 2020, Docket No. 40.)

## DISCUSSION

**I.    STANDARD OF REVIEW**

Courts evaluating a motion for preliminary injunctive relief weigh four factors, commonly referred to in this Circuit as the *Dataphase* factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm injunctive relief would cause to the other litigants; and (4) the public interest.  *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

When applying these factors, "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)).  That said, "injunctive relief is an extraordinary remedy and the movant has the burden of establishing the propriety of an injunction."  *Watts v. Fed. Home Loan Mortg. Corp.*, No. 12-692 SRN/JSM, 2012 WL 1901304, at *3 (D. Minn. May 25, 2012).

## II.   ANALYSIS

Given the particular facts of this case, the Court will first consider the question of irreparable harm.  "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  "To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (cleaned up).  This factor is required to grant injunctive relief.  *Id.* ("Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm.")

Appdiff has not adequately demonstrated it is likely to suffer irreparable harm for several reasons. *Id.* First, Defendants have stipulated that they will no longer associate themselves with the PinkLion name and are preserving without altering information on the four accounts in dispute. Any past actions otherwise can be remedied by damages.

Second, it appears undisputed that Appdiff's customer base is secure and that Defendants are not attempting to divert Appdiff's customer base to their own, new venture. In fact, Defendants contend that their new venture is not a direct competitor with Appdiff at all. And although Appdiff states that they are unable to communicate with potential clients, they point to no specific business being lost.

Third, Defendants state that they have never had access to Appdiff's trade secret AI technology or source code information and therefore there is no risk they could use it or disclose it without authorization. Any allegations of past improprieties related to such information can be remedied with damages.

Fourth, although Appdiff argues that a clause contained within Defendants' employment contracts states that a violation of the employment agreement constitutes irreparable harm, such a clause is but one consideration in the irreparable harm analysis. *See Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1055 (D. Minn. 2019) ("The Agreement's inclusion of a term acknowledging the possibility of irreparable harm in the event of a breach does not establish a likelihood of irreparable harm here.") Under the circumstances of this case and presuming that Appdiff meets the

likelihood of success of the merits factor for its breach-of-contract claim, the Court finds that the presence of such a clause, on its own, does not create irreparable harm.

Finally, because Defendants are no longer employed by Appdiff, Appdiff faces no prospective harm on its claims relating to duty of loyalty or aiding and abetting such a breach, given that these duties only exist while employed. *See Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987) (citing *Sanitary Farm Dairies, Inc. v. Wolf*, 112 N.W.2d 42 (1961)).

In sum, the Court finds that Appdiff has not shown that it is likely to suffer harm that "is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski*, 648 F.3d at 706. Accordingly, the Court will deny Appdiff's motion without considering the remaining *Dataphase* factors.

Even so, to resolve the issue of ownership over the disputed accounts and information within, the Court will order the parties to adhere to an expedited discovery schedule, to be set by the Magistrate Judge. The Court also notes that its decision denying equitable relief here does not absolve Defendants of potential liability for damages at a later time. The Court also expects Defendants to adhere to their agreement to no longer associate themselves with PinkLion. If Defendants fail to follow their stipulation or attempt to test its contours, the Court encourages Appdiff to renew its motion for injunctive relief.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for a Temporary Restraining Order [Docket No. 6] is **DENIED**;

2. The parties are directed to engage in an expedited discovery schedule, as set by the Magistrate Judge, to resolve the ownership issues related to limited accounts that remain in dispute.

DATED: August 12, 2020                  _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                                  Chief Judge
                                                      United States District Court